IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY JOE MASK,<br><br>               Petitioner,<br><br>    vs.<br><br>PATRICK COVELLO, Acting Warden,<br>Richard J. Donovan Correctional Facility,<br><br>               Respondent. | No. 2:15-cv-02168-JKS<br><br>MEMORANDUM DECISION |

Bobby Joe Mask, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Mask is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Richard J. Donovan Correctional Facility. Respondent has answered, and Mask has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 31, 2012, Mask was charged with 15 counts of sexual molestation of his daughter, V.M. The information additionally alleged that Mask had suffered a prior strike conviction for assault with a deadly weapon. Mask pled not guilty, denied the allegation, and proceeded to a jury trial on January 30, 2012. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Mask and the evidence presented at trial:

> The sexual abuse began when [Mask] and V.M. lived at the Colonial Apartments. When the first incident occurred, no one else lived with them.[FN1] On that occasion, when V.M. was 10 years old, [Mask] picked her up from school and took her home. [Mask] told V.M. to put away her things and go to his room. [Mask] came into his room and told V.M. to take off her clothes and lay on the floor. She complied. [Mask] took his clothes off, touched V.M.'s vagina with his penis, orally copulated her, and had intercourse. [Mask] said nothing to her after he had stopped.

FN1. There were other times when [Mask's] then girlfriend and V.M.'s "stepmom," Linda W., and another of his daughters lived with them at the Colonial Apartments.

V.M. testified at trial in 2012 this was the only molestation that occurred at the Colonial Apartments, but in October 2010, in a Sexual Assault Forensic Exam (SAFE) interview, she stated the same type of molestation had happened two or three times while she and [Mask] lived there.

V.M. testified [Mask] did not abuse her when they lived in their next residence, the Gold River Apartments. However, in the SAFE interview, V.M. said [Mask] molested her every other day at the Gold River Apartments.

For a time, V.M. and her sister next lived with an older sister. No molestations occurred there, but one time, after [Mask] had brought V.M. to his house to spend the weekend, he told her to take her clothes off, and he digitally penetrated her.

The molestations continued after V.M. and her sister moved to a townhouse on Hallelujah Court where [Mask] and Linda W. had been living. Three of V.M.'s nephews and one niece also lived with them. V.M. had just completed 7th grade when she moved to Hallelujah Court. One day, [Mask] sent V.M.'s sister to the store, and he told V.M. to go upstairs to his room. He followed her into the room, told her to take her clothes off, took his clothes off, and orally copulated her. He also placed his penis on her vagina, and it penetrated her. He did this for a couple of minutes, but stopped when V.M.'s sister came home.

V.M. [testified that Mask] put his penis on her vagina more times than she could count while they lived on Hallelujah Court. She also stated [Mask] had intercourse with her two times and orally copulated her "a lot" while living there. Every time [Mask] touched V.M.'s vagina, his finger penetrated her, and that happened more than once.

Every time [Mask] finished molesting V.M., he told her not to tell anyone. It felt wrong to V.M. when he said that, but she never told anyone what was happening to her until a school counselor read her journal. One journal entry stated: "Dear Journal [¶] I don't want to go back home because my dad does bad things to me like when everybody else in the house is gone he tells me to go upstairs into his room and tells me to pull down my pants and he puts his mouth on my private and he puts his tounge [sic] all around it. When everybody comes back to the house he is like 'pull up your pants and you better not tell anybody, not at school, not at home, and or anywhere else. I don't want to go home."

Once, while they lived on Hallelujah Court, V.M. was outside talking with her friends. [Mask] called her in and asked if she had told her friends anything. She said she had not. [Mask] became angry, yelled at her, and slapped her across her face. V.M. felt scared. She believed if she ever told anyone she was being molested, [Mask] would hit her.

V.M. never resisted [Mask's] actions and never asked him why he was molesting her. When she was in the sixth grade, she ran away. [Mask] found her, took her home, and asked why she had run away. V.M. told him she had left because she wanted him to

2

stop molesting her. [Mask] said he would stop, but two or three days later, he began molesting her again.

Another of [Mask's] adult daughters, L.M., and two adult daughters of former girlfriends of [Mask], S.S. and S.A., testified at trial that [Mask] had molested them also when they were children.

*People v. Mask*, No. C071954, 2014 WL 3697095, at *1-2 (Cal. Ct. App. July 25, 2014).

At the conclusion of trial, the jury convicted Mask of one count of sexual intercourse with a minor 10 years of age or under at the Colonial Apartments, one count of sexual penetration with a minor 10 years of age or younger at the Colonial Apartments, and 7 counts of child molestation with force or duress. Two of the molestation convictions were alleged to have occurred at the Colonial Apartments and the other five convictions were alleged to have occurred at the townhouse on Hallelujah Court. The court also found that Mask had previously been convicted of a serious felony for purposes of the Three Strikes Law.[1] The court sentenced Mask to an aggregate term of 90 years to life imprisonment plus 117 years.

Through counsel, Mask appealed his conviction, arguing that: 1) the trial court abused its discretion by admitting under California Code of Evidence §§ 1108 and 1101[2] evidence of Mask's prior uncharged sex offenses against another daughter and two daughters of Mask's former girlfriends; 2) insufficient evidence supported the jury's finding that Mask committed 7

---

[1] *See People v. Acosta*, 52 P.3d 624, 640 (Cal. 2002) (holding that California Penal Code § 667(a) requires that a 5-year term enhancement applies where a defendant's prior conviction qualifies as a strike).

[2] California Evidence Code § 1108 allows the prosecution to prove a defendant's propensity to commit sex crimes by offering evidence that he has committed other sex crimes. It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible. *See* CAL. EVID. CODE §§ 1101(a), 1108(a). The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

3

counts of child molestation with duress; 3) insufficient evidence supported the jury's guilty verdict of sexual penetration of a minor and 1 count of child molestation; and 4) the trial court abused its discretion by not disclosing to Mask the entirety of the victim's subpoenaed school records. The Court of Appeal unanimously reversed Mask's conviction on Counts 3 and 5, agreeing that there was no evidence of digital penetration or forcible molestation while they lived at the Colonial Apartments, but affirmed the judgment against Mask in all other respects in a reasoned, unpublished opinion issued on July 25, 2014. *Mask*, 2014 WL 3697095, at *8. Mask petitioned for review in the California Supreme Court, raising his unsuccessful claims that the admission of the uncharged sexual acts violated his right to due process, and the evidence did not prove force, fear or duress and was therefore insufficient to sustain the child molestation with duress convictions. The Supreme Court summarily denied review on October 15, 2014.

Mask then filed in the Superior Court a *pro se* petition for habeas relief that alleged that trial and appellate counsel were ineffective, his *Miranda*[3] rights were violated and his arrest was without probable cause, his conviction was secured by vindictive prosecution, it was reversible error for the court to admit uncharged offenses at trial, and he was actually innocent of the crime. The Superior Court denied the petition in a reasoned, unpublished opinion issued on June 8, 2015. Mask raised the same claims in *pro se* habeas petitions to the Court of Appeals and Supreme Court, which were denied without comment on July 31, 2015, and January 13, 2016, respectively.

While the state habeas petitions were pending, Mask timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 8, 2015. Docket No. 1; *see* 28 U.S.C.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

§ 2244(d)(1)(A). This Court, through a previously-assigned magistrate judge, granted Mask's request to stay the federal proceedings to allow him to exhaust his claims in state court. Docket No. 15. Mask subsequently filed an Amended Petition for a Writ of Habeas Corpus (Docket No. 17, "Petition"), which is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Mask raises the following five grounds for relief: 1) trial and appellate counsel were ineffective for a variety of reasons; 2) his *Miranda* rights were violated upon his arrest; 3) the trial court erred in admitting at trial evidence of uncharged crimes; 4) the evidence was insufficient to sustain the child molestation with duress convictions; and 5) the trial court erred in failing to disclose to Mask the entirety of the victim's subpoenaed school records.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A. **Claims in the Third Amended Petition**

1. *Free-standing Ineffective Assistance of Counsel Claims* (Grounds 1, 3, 4)

Mask first argues that trial and appellate counsel were ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the

7

> *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Mask must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

None of Mask's claims satisfy this heavy burden. He first argues that trial counsel was ineffective for failing to object to the testimony of Mask's children and step-children on the ground that the testimony was impermissibly coerced and unlawfully obtained by the prosecutor's threats. But as the state superior court found in rejecting this claim on state habeas review and as discussed more thoroughly *infra*, the prosecution was "entitled" to present evidence of Mask's prior uncharged similar acts of molestation against his other children and step-children, and the prosecution lawfully issued subpoenas in that regard. While the superior court acknowledged that the children and step-children were reluctant to testify, Mask provides no evidentiary support that they were impermissibly coerced or threatened into testifying. Moreover, all of the witnesses were cross-examined by defense counsel, and Mask does not provide any evidentiary support that the challenged testimony was false either.

Mask additionally contends that trial counsel should have presented motions to suppress evidence and to dismiss charges. But Mask does not specify any grounds upon which to base his motions and thus does not establish any likelihood of success. Such vague and conclusory allegations do not warrant habeas relief as they do not meet the specificity requirement. *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations unsupported by a statement of specific facts do not warrant habeas relief); *see also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) ("the petition is expected to state facts that point to a 'real possibility of constitutional error'" (citation omitted)); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Finally, Mask avers that appellate counsel was ineffective for raising issues on appeal that were too weak for success. However, one of the claims that Mask contends should not have been raised was actually successful on direct appeal. The record indicates that appellate counsel successfully challenged the sufficiency of the evidence on two separate counts which eliminated a term of 35 years to life imprisonment plus 16 years off of Mask's sentence. *Mask*, 2014 WL 3697095, at *7. Moreover, the claims that Mask complains were not raised on direct appeal were later denied on the merits by the state courts. Mask thus fails to show any reasonable likelihood that such claims would have been successful had appellate counsel raised them on direct appeal. Mask is thus not entitled to relief on any argument advanced in support of these grounds.

2. *Miranda Violation/Ineffective Assistance of Counsel* (Ground 2)

Mask additionally argues that he was never warned pursuant to *Miranda* after his arrest.

9

The requirements of *Miranda* are "clearly established" federal law for the purposes of federal habeas corpus review under 28 U.S.C. § 2254(d). *Juan H. v. Allen*, 408 F.3d 1262, 1271 (9th Cir. 2005); *Jackson v. Giurbino*, 364 F.3d 1002, 1009 (9th Cir. 2004). The Ninth Circuit has held that: (1) *Miranda* violations are properly considered in federal habeas proceedings; and (2) where statements are used as evidence of guilt and there is no proper instruction to the jury regarding the limited use of such statements, there is the possibility of federal constitutional error. *Hinman v. McCarthy*, 676 F.2d 343, 348-49 (9th Cir.), cert. denied, 459 U.S. 1048 (1982).

Here, however, the superior court concluded that "petitioner has failed to show how any statement taken in violation of *Miranda* was used in his case." That finding is fully supported by the record. While the record indicates that the parties, in limine, anticipated the possibility of introducing Mask's statements to a law enforcement officer, a review of the transcript indicates that the officer did not testify as to the content of any statements Mask made. Mask thus fails to establish an actionable violation of his constitutional rights, and he does not show that counsel was ineffective for failing to object. Mask is thus not entitled to relief on this ground.

**B.    Claims in the First Petition**.

"It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent. [ ] Once amended, the original no longer performs any function as a pleading[.]" *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998) (quoting *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (internal citations omitted)). It does not appear, however, that, by filing his Third Amended Petition, Mask intended to abandon the claims raised in his earlier petition because, for each ground raised in the Third Amended

10

Petition, he contends that the issues "were properly conjoined with Petitioner's existing" initial petition filed on October 8, 2015 (Docket No. 1). Accordingly, given Mask's *pro se* status, the Court will liberally construe pursuant to *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Mask's filings to retain the following claims raised in his initial filing at Docket No. 1.

    1.    <u>*Evidentiary Error/Ineffective Assistance of Counsel*</u> (Ground 1)

Mask argues that the trial court erred when it admitted pursuant to Evidence Code §§ 1108 and 1101 evidence of his uncharged sex offenses against his daughter L.M. as well as against two of his former girlfriend's daughters, S.S. and S.A.

California Evidence Code § 1108 allows the prosecution to prove a defendant's propensity to commit sex crimes by offering evidence that he has committed other sex crimes. It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible. *See* CAL. EVID. CODE §§ 1101(a), 1108(a). The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." FED. R. EVID. 413(a).

As an initial matter, Mask cannot prevail on this claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief.

*See Estelle*, 502 U.S. at 67-68. Indeed, Mask cannot demonstrate that the trial court committed error. The record reflects that the trial court properly weighed the evidence against its potential to cause prejudice and instructed the jury that it may, but was not required, to infer from the evidence that he had a disposition to commit sexual offenses.

Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108. *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). And because Mask fails to establish that the trial court erred in admitting such evidence, Mask fails to demonstrate that counsel were ineffective for not challenging the admission at trial. Mask is therefore not entitled to relief on this ground.

2. *Insufficiency of the Evidence* (Ground 2)

Mask also challenges, as he did on direct appeal, the sufficiency of the evidence demonstrating that the molestations were committed with force or duress.[4] As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

---

[4] Mask also complains in Ground 3 of his initial petition that the evidence was insufficient to support his conviction for Count 3, which alleged that Mask digitally penetrated the victim. The Court of Appeal, however, unanimously reversed Mask's conviction on Count 3, agreeing that there was no evidence of digital penetration while they lived at the Colonial Apartments. *Mask*, 2014 WL 3697095, at *8.

13

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 132 S. Ct. at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Mask contends, as he did on direct appeal, that there was no substantial evidence demonstrating that any of the molestations were committed with force or duress as required for the seven convictions of molesting a child "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." CAL. PENAL CODE § 288(b)(1). In rejecting this claim on direct appeal, the Court of Appeal reasoned:

> Sufficient evidence confirms [Mask] committed the acts with duress. Duress arose from [Mask's] parental relationship with V.M. and his position of dominance and authority, his older age and greater size, his continuous exploitation of V.M., and his implicit threat as a parent that her failure to obey would result in some kind of hardship.
> [Mask] controlled V.M. at her young age. He is her biological father. He began molesting her when he was 57 years old, and V.M. was 10 years old. He continued to molest her until just prior to her 13th birthday. [Mask] is five feet, eleven inches tall and weighs 165 pounds. The record does not disclose V.M.'s size at the time of the molestations, but she was much younger than [Mask].
> His authority appeared unquestionable when the molestations began. The first molestations occurred when [Mask] and V.M. lived alone in the Colonial Apartments. He was the only parental authority in her life at that time. [Mask] brought her home, and ordered her to go to his room, take off her clothes, and lie down. The molestation left her scared, and he told her not to tell anyone. She was a young victim molested by her father in the family home. As with his other children and the daughters of his various girlfriends, he never explained his misconduct to her.
> [Mask] exploited V.M. continuously. He continued molesting her using the same general pattern of ordering her to obey when they moved to the Hallelujah Court townhouse. Again, he ordered her to go to his room and take off her clothes. Again, he told her not to tell anyone. And when he feared she had told friends of his actions, and she denied it, he slapped her, confirming in her mind there was a risk of harm if she went against his orders. The molestations continued after that battery, and they occurred at that residence too many times to count.
> This evidence establishes [Mask] psychologically coerced V.M. to obey him, and he did so with an implicit threat of harm or hardship. Although there is no evidence he expressly threatened her harm, physically restrained her, or verbally warned her of harm, there is sufficient evidence he implicitly threatened her to comply with his demands. When a father repeatedly orders his young daughter to go to his room, take off her clothes, and lie down so that he can molest her, and then repeatedly tells her not to tell "anybody, not at school, not at home, and or anywhere else," such that she fears going home, he is impliedly threatening her with hardship or retribution if she fails to comply with his parental authority. In that situation, the risk of some adverse consequence for disobedience is real. A father who uses his parental authority to direct and order a child's

> actions in the manner done here so he can molest her commits the molestation by duress. Sufficient evidence establishes [Mask] molested V.M. by means of duress.

*Mask*, 2014 WL 3697095, a t *6-7.

That conclusion is both reasonable and fully supported by the record. Although it might have been possible to draw a different inference from other evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Mask bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. Moreover, the California Court of Appeal's conclusion that Mask's parental relationship with the victim, position of dominance and authority, older age and greater size, and continuous exploitation of the victim demonstrated that Mask committed the acts with duress under California law raises an issue of state law that is binding on this Court. *Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) (federal court has no "'province . . . to reexamine state-court determinations on state-law questions'"); *Bradshaw*, 546 U.S. at 76. For the reasons persuasively stated by the Court of Appeal, the record does not compel the conclusion that no rational trier of fact could have found that Mask committed the acts with duress, especially considering the double deference owed under *Jackson* and AEDPA. Mask is therefore not entitled to relief on his legal insufficiency claim.

    3.    <u>*Non-Disclosure of School Records*</u> (Ground 4)

Finally, Mask argues the trial court erred in failing to disclose in its entirety the victim's school records. The Court of Appeal considered and rejected this claim on direct appeal as follows:

>[Mask] subpoenaed V.M.'s school records. The trial court denied V.M.'s motion to quash, and it conducted an in camera review of the produced records. The court disclosed one document under a protective order it found was relevant to V.M.'s credibility. The document was a suspension notice issued after V.M. had stolen a cell phone in class.
>
>[Mask] asks us to review the records in camera for relevance, and to make the records available to the parties under a protective order. [Mask] asserts he needs to view the records in order to be able to argue that the trial court's refusal to disclose all of the records at trial violated his due process rights.
>
>Good cause to compel production of confidential records in a criminal action does not entitle a defendant to receive them. Rather, the custodian of the records forwards them to the court and, if good cause exists, the court will review them in camera, balance the defendant's right of confrontation against the subject of the record's right of privacy, and determine which records, if any, are essential to the defendant's right of confrontation. If the court determines after an in camera hearing that no records may be disclosed, a defendant is not entitled to view the documents in order to show the court abused its discretion. (*See Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 59–61 [94 L.Ed.2d 40, 58–60] [defendant's right to fair trial when seeking disclosure of confidential records is adequately protected by an in camera review of the records].)
>
>We have reviewed the sealed records and conclude the trial court did not abuse its discretion. Except for the record already disclosed, none of the records are essential to [Mask's] right of confrontation, and that right does not outweigh V.M.'s right of privacy in this instance.

*Mask*, 2014 WL 3697095, at *7-8 (citations omitted).

Mask fares no better on federal habeas review. Again, Mask's challenge to the trial court's evidentiary ruling raises no federal question because "alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996); *see also Cooper v. Brown*, 510 F.3d 870, 1001 (9th Cir. 2007) (claim of evidentiary error "fails to present a federal question cognizable on federal habeas review").

To the extent he reasserts his claim that had a statutory right under California Education Code § 49069 and Family Code § 3025,[5] even assuming a right to discovery under state law,

---

[5] The Court of Appeal deemed the claim forfeited on direct appeal because it was raised for the first time in his reply brief. *Mask*, 2014 WL 3697095, at *8.

neither statute creates a right under federal law, and Mask has not cited to any relevant authority indicating that the trial court violated his federal constitutional rights when it denied full disclosure. There is no clearly established federal right to compel pretrial discovery in a situation like Mask's, particularly since the discovery he requested would not have provided him with a defense under California law and the trial judge conducted an in camera review of the records, which was affirmed by the Court of Appeals. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 64-65 (1987);[6] *see also Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) ("A defendant has no right . . . to present irrelevant evidence."). Mask is thus not entitled to relief on this ground.

## V. CONCLUSION AND ORDER

Mask is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[6] In *Ritchie*, the Court considered and rejected the Supreme Court of Pennsylvania's decision that, in a case like this, a defendant was entitled to have his attorney review all of a complaining witness's confidential records, with an advocate's eye, to see if there might be information relevant to exculpation or the impeachment of adverse witnesses. 480 U.S. at 51-56. The *Ritchie* court held that the defendant was entitled to have the trial court review the records in camera to determine whether relevant information was available, but was not entitled to conduct a fishing expedition through the complaining witness' records himself. *Id.* at 57-58. The superior court followed this procedure. No Supreme Court decision reaches the next step and determines whether, after an in camera review, the trial court committed federal error in limiting the information disclosed. On this point, we must look to more general discussions in Supreme Court opinions addressing unrelated facts. Of course, the more general the rules we are applying, the more leeway the state court has in reaching a "reasonable" application. *Renico v. Lett*, 559 U.S. 766, 776 (2010). In an abundance of caution, the Court obtained the confidential school records at issue. Docket Nos. 45, 46. This Court's independent in camera review confirms that no material exculpatory evidence was withheld, and the state court's rejection of this claim was reasonable.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 20, 2018.

                                                /s/James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                Senior United States District Judge